# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JACQUELYN REAVES, | Civil Action No.: |
| *Plaintiff*, | 22-cv-01782-PGS-RLS |
| v. | **MEMORANDUM** |
| MONMOUTH UNIVERSITY, et al., | |
| *Defendants*. | |

This matter comes before the Court on the following seven motions in *pro se* plaintiff Jacquelyn Reaves' ("Plaintiff" or "Reaves") action:

1) Motion to Dismiss filed by defendants Monmouth Medical Center, Amina Chowdhury, Matthew Geller, Virginia Kinneman, Robert Wood Johnson University Hospital, and James McCallum (ECF No. 23);

2) Motion to Dismiss filed by defendants Neptune City Police Department, Keith Mitchell, Michael Volbrecht, and Edward Kirschenbaum (collectively, the "NCPD Defendants") (ECF No. 36);

3) Motion to Dismiss filed by defendants Monmouth University, Monmouth University Police, Nina Anderson, Charlene Diana, Joanne Jodry, Maryanne Nagy, Grey Dimenna, Franca Mancini, and William McElrath (collectively, the "MU Defendants") (ECF No. 37);

4) Motion to Vacate Entry of Default, to Extend Time to Answer, and to Dismiss the Amended Complaint filed by defendants Trenton Psychiatric Hospital and Patrick Ervilus (ECF No. 53);

5) Motion to Dismiss filed by defendant Katie Ozolins (ECF No. 54);

1

6) Motion to Join Motion to Dismiss (ECF No. 37) as Movant filed by defendant Jeffrey Layton (ECF No. 55); and

7) Motion for Default Judgment against defendants Robert Cavella, Trenton Psychiatric Hospital, and Patrick Ervilus filed by Plaintiff Jacquelyn Reaves (ECF No. 65).

Three of the motions were decided in part during oral argument on August 18, 2022. The Court (1) granted Trenton Psychiatric Hospital ("Trenton Psychiatric") and Patrick Ervilus' motion to vacate the entry of default and to otherwise plead (ECF No. 53); (2) granted Jeffrey Layton's motion to join the MU Defendants' motion to dismiss (ECF No. 55); and (3) denied Plaintiff's motion for default judgment against Trenton Psychiatric, Patrick Ervilus and Robert Cavella (ECF No. 65).[1]

This complaint is, in large part, a repeat of a complaint filed in 2016. *See infra* Section 1.a. The purpose of this memorandum is twofold: (1) to decide the pending motions; and (2) to detail how the complaint might be amended should Plaintiff seek to file an amended complaint. The problem that the Court has encountered is that Plaintiff filed what is known as a "shotgun" pleading. The factual allegations in her complaint neither relate to a specific count nor do they

---

[1] During oral argument on August 18, 2022, the Court questioned whether defendant Robert Cavella had been properly served. The Court was specifically concerned because the proof of service for Mr. Cavella was signed by a security officer at a RWJUH location in Somerville, NJ with the note "Accepting for hospital" (ECF No. 11 at 5-6) and counsel for RWJUH represented that RWJUH did not find Mr. Cavella's record.

clearly identify the defendants each claim is brought against. While certain allegations may be amended, there are also futile claims interspersed in the individual counts that are dismissed herein with prejudice and may not be amended. In light of same, this memorandum is organized by setting forth a summary of the allegations, the standard of law, and finally a discussion of how the facts and law apply to each motion.

## I.

In 2016, Plaintiff filed a lawsuit in this Court against several of the same defendants named in the present action based on some of the same alleged incidents, and therefore, the Court will first briefly recount the prior lawsuit and then review the present matter.

### a. The 2016 Lawsuit

On June 1, 2016, Plaintiff filed a lawsuit styled *Reaves v. Monmouth County Prosecutor's Office et al.*, no. 16-cv-03127-PGS-DEA (D.N.J. June 1, 2016) against twenty-eight defendants, including Monmouth University ("MU"), Joanne Jodry, Grey Dimenna, Charlene Diana, Neptune City Police Department ("NCPD"), Keith Mitchell, Monmouth Medical Center ("MCM"), and Trenton Psychiatric, all of whom are also defendants in the present lawsuit (the "2016 Lawsuit") (2016 Amended Complaint, ECF No. 5). Broadly speaking, the 2016 Lawsuit alleged, in part, that between 2014 and 2016, the defendants conspired

3

together in numerous ways to harass, discriminate against, and kidnap Plaintiff, culminating in Plaintiff's arrest and involuntary commitment for psychiatric concerns.[2] (*See generally id.* at ¶¶ 43-200). Plaintiff filed civil rights claims against the collective defendants, as well as numerous claims arising under state criminal law such as kidnapping, harassment, official misconduct, and retaliation, all of which she alleged was the result of her race, color and gender. (*See generally id.* at ¶¶ 206-89).

After reviewing the Amended Complaint filed in the 2016 Lawsuit pursuant to several motions to dismiss and considering the Court's own duty to screen *in forma pauperis* complaints, the Court issued an order on January 31, 2017 dismissing the amended complaint without prejudice against all but one defendant for failure to properly serve the defendants under Fed. R. Civ. P. 5(b) and for failure to set forth a short and plain statement showing Plaintiff was entitled to relief under Fed. R. Civ. P. 8(a)(2). (ECF No. 45). In addition, Plaintiff was granted the right to amend the complaint. On May 1, 2017, the Court denied Plaintiff's motion for reconsideration of the dismissal order and further granted MCM's Rule 12(b)(6) motion to dismiss for failure to state a claim. (ECF No. 61). Finally, on August 9, 2018, the Court denied Plaintiff's motion for relief from final

---

[2] *See infra* Section I.b. for further elaboration.

4

judgment. (ECF No. 81). Thereafter, Plaintiff did not file an appeal or amended complaint in the 2016 Lawsuit.

b. <u>The Present Lawsuit</u>

On March 30, 2022, Plaintiff initiated a new action in this Court. Plaintiff's Amended Complaint consists of 45-pages, 263 paragraphs and 13 counts[3] against twenty-eight defendants. (ECF No. 6). Although the Amended Complaint does not provide a short and clear statement of each cause of action, the Court has performed a liberal reading to decipher the pleading. Broadly, Plaintiff alleges five incidents giving rise to her complaint. The Court is familiar with the first two incidents, as they took place between 2014 through 2015 and were alleged in the 2016 Lawsuit. The third and fourth incidents occurred on unspecified dates, and the fifth incident took place in 2017. The Court recites the allegations of the five incidents here as best as it can while keeping in mind the need to construe *pro se* pleadings liberally. *See Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004).

The first incident occurred in or around September 2014 through January 2015. Plaintiff alleges that while she was a graduate student at MU, she was harassed by Jodry, a psychology professor at MU. (Am. Compl. at ¶¶ 38-47, ECF No. 6). Plaintiff alleges Jodry, Nagy, Mitchell and Volbrecht conspired against her to file a false police report in connection with a photo of Plaintiff, her niece and

---

[3] Plaintiff includes up to count 14 in her Amended Complaint but omits count 9.

dog that Plaintiff sent to Jodry. (*Id.* at ¶¶ 106-13). The situation apparently escalated incrementally as other MU staff, including defendant Dimenna, allegedly began harassing Plaintiff after she filed a harassment complaint with Anderson, the director of the Office of Equity and Diversity at MU. (*Id.* at ¶¶ 48-50). Plaintiff filed a police report with Monmouth University Police against defendants Jodry, Dimenna and Kapalka.[4] (*Id.* at ¶ 51). In turn, Monmouth University Police allegedly issued an "order of protection" on behalf of Plaintiff, and Plaintiff was reportedly dropped from her classes until her tuition and housing costs were paid. (*Id.* at ¶¶ 48-55, 57-64).

The matter culminated when Plaintiff scheduled a meeting with MU's associate general counsel, Diana, on or around January 13, 2015 to discuss Plaintiff's enrollment, but Plaintiff was instead met by defendants Mitchell and Volbrecht of the NCPD. (*Id.* at ¶¶ 80-88). The arrest was allegedly orchestrated by defendants Dimmena, Diana and Layton. (*Id.* at ¶¶ 92-98). Officers Mitchell and Volbrecht allegedly took Plaintiff into custody and drove her to Monmouth Medical Center where she was stripped naked, strapped to a hospital bed, involuntarily sedated, and forced to submit to a psychiatric screening by

---

[4] Plaintiff has not filed proof of service as to Mr. Kapalka, and he has not answered, moved or otherwise responded to the complaint.

6

defendants Rafinello and Trachta.[5] (*Id.* at ¶¶ 89-105). Trachta obtained Plaintiff's

personal information without Plaintiff's authorization from defendant Mancini. (*Id.*

at ¶104). Plaintiff was committed involuntarily as she was "disallowed from

signing herself out" and remained at MCM for approximately one month. (*Id.* at ¶¶

114-37). When Plaintiff tried to explain her situation to staff at MCM, defendants

Geller, Kinneman, Soboti[6] and Chowdhury increased her medication and sedation.

(*Id.* at ¶¶ 114-17). Subsequently, Plaintiff was transferred to Trenton Psychiatric

Hospital for two more months of commitment under the care of defendant Ervilus.

(*Id.* at ¶¶ 114-37). Plaintiff was evidently discharged from Trenton Psychiatric

sometime prior to August 2015. (*Id.* at ¶¶ 137-39).

The second incident occurred in or around September 2015 through October

2015, Plaintiff alleges that she attempted to file criminal charges with NCPD

against Jodry, Mitchell, and Volbrecht for their aforementioned conduct in

connection with the first incident. (*Id.* at ¶ 143). However, she was unable to do so

because defendant Kirschenbaum of NCPD declined to take the case, and because

NCPD itself allegedly conspired with Long Branch Police Department and Toms

River Police Department to subject Plaintiff to another psychiatric screening. (*Id.*

---

[5] Defendant Rafinello was served on May 26, 2022 by substitute service in Florida (ECF No. 57), however, he has not answered, moved or otherwise responded to the complaint. Plaintiff has not filed proof of service as to defendant Trachta. Neither Rafinello nor Trachta have answered, moved or otherwise responded responded to the complaint.
[6] Plaintiff has not filed proof of service as to defendant Soboti, and she has not answered, moved or otherwise responded to the complaint.

at ¶¶ 143-66). During this time, Plaintiff also contacted the Monmouth County Prosecutor's Office to file charges against Mitchell and Volbrecht, however, the prosecutor's office refused to investigate and directed Plaintiff to lodge a complaint with the Long Branch Police Department. (*Id.* at ¶¶ 152-54).

The third incident occurred on an unknown date, Plaintiff visited the police department in Manville, New Jersey in order to press charges against some unspecified grouping of defendants. (*Id.* at ¶ 169). At the police department, Plaintiff was told she was not allowed to leave until she received a psychiatric screening. (*Id.* at ¶ 170). Subsequently, Plaintiff was transported to Robert Wood Johnson University Hospital ("RWJUH") where she was involuntarily sedated and forced to submit to a new psychiatric screening. (*Id.* at ¶¶ 172-78). Plaintiff was apparently committed involuntarily at RWJUH for one week, during which time defendant McCallum forced drugs down her throat, pushed her into a locked room and had her restrained while he injected her with drugs. (*Id.* at ¶¶ 176-77). Subsequently, Plaintiff was transferred twice – first to Summit Oaks Hospital for approximately one month and second to Greystone Psychiatric Hospital for two additional months. (*Id.* at ¶¶ 179-81).

The fourth incident occurred on an unknown date after her release from Greystone Psychiatric Hospital, Plaintiff alleges that employees of RWJUH stalked her for an indefinite amount of time until they convinced Manville police to arrest

Plaintiff at her home, and transport her to RWJUH. (*Id.* at ¶ 182). Plaintiff was involuntarily committed at RWJUH by defendant Cavella for one week before she was transferred to St. Francis Medical Center in Trenton, New Jersey for one month. (*Id.* at ¶¶ 184-90).

The final incident occurred sometime in 2017, Plaintiff was allegedly taken into custody by Manville police and transported to RWJUH by defendant Ozolins, a licensed social worker, where she was again stripped naked, involuntarily sedated and committed for one week before she was transferred back to Greystone Psychiatric Hospital for an additional two month period. (*Id.* at ¶¶ 191-94). Separately, but also in 2017, Plaintiff received an email from defendant McElrath stating that she would be arrested if she stepped onto campus at MU. (*Id.* at ¶ 195).

## II.

Plaintiff alleges that all the above alleged wrongdoing were inflicted upon her based on her race, color, and gender without relating any specific allegations to her causes of action. (*Id.* at ¶¶ 3, 42, 121). Specifically, Plaintiff alleges causes of action under state criminal law and federal civil rights statutes including: Bias Intimidation (count one); False Reports to Law Enforcement Authorities (count two); Aggravated Assault and Battery (count three); Official Misconduct (count four); Stalking (count five); Criminal Harassment (count six); Discrimination in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1985 and 42 U.S.C. § 1988 (counts

seven, eight and ten); Medical Malpractice (count eleven); Legal Malpractice (count twelve); Violation of Title IX (count thirteen); and Vicarious Liability (count fourteen). More specifically, aside from her claim for Vicarious Liability which she only asserts against some defendants,[7] Plaintiff appears to assert her other twelve claims against every defendant. (*Id.* at ¶¶ 209-63). Plaintiff seeks in part assorted declaratory relief, injunctive relief, and $300 million in damages. (*Id.* at Prayer for Relief).

### III.

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is meant to ensure that defendants are given "'fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 at 556). The complaint, therefore, does not require detailed

---

[7] Defendant asserts her vicarious liability claim against MU, Monmouth University Police, NCPD, MCM, Trenton Psychiatric, and RWJUH.

factual allegations, but the claimant is required to provide "more than labels and conclusions" or "a formulaic recitation of the elements" for the claims submitted. *Twombly*, 550 U.S. at 555; *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010).

District courts conduct a three-part analysis in determining the sufficiency of a complaint on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth. Third, 'whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Id.* (alterations in original) (citations omitted) (quoting *Iqbal*, 556 U.S. at 664, 675, 679). As part of this inquiry, "the court must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). However, the court need not accept "unsupported conclusions and unwarranted inferences," nor "legal conclusion[s] couched as . . . factual allegation[s]." *Castleberry v. STI Grp.*, 863 F.3d 259 (3d Cir. 2017) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). As such, "[t]o survive a motion to dismiss, a complaint must

11

contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. Pro. 8(a)(2)); *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

"Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted). However, courts in this circuit allow an affirmative defense to be raised by a Rule 12(b)(6) motion if its applicability can be readily determined from the face of the complaint and documents properly considered on a Rule 12(b)(6) motion. *See id.* (internal quotation marks and citation omitted) ("[A] limitations defense [may be] raised by a motion under Rule 12(b)(6) only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."); *Rycoline Prod., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) (res judicata defense); *Parker v. Est.*

12

*of Blair*, No. CV1921093KMSCM, 2020 WL 6707963, at \*3 (D.N.J. Nov. 16, 2020) (collateral estoppel and the entire controversy doctrine defenses). "Since the applicability of [affirmative defenses] usually involves questions of fact for the jury, if the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017) (internal quotation marks, brackets, and citations omitted).

Additionally, when considering a motion to dismiss a *pro se* plaintiff's complaint, the court reads the complaint more liberally relative to one drafted by an attorney. *See Alston*, 363 F.3d at 233-34. "Courts are to construe complaints so as to do substantial justice . . . keeping in mind that *pro se* complaints in particular should be construed liberally." *Id.* (internal quotation marks and citations omitted). While *pro se* complaints "must be held to 'less stringent standards than formal pleadings drafted by lawyers,'" *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), they must still adhere to the Federal Rules of Civil Procedure and contain "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

**IV.**

Counts one through six assert violations of New Jersey criminal statutes. However, New Jersey law does not provide a private right of action to bring a civil lawsuit pursuant to these statutes. *See Mouratidis*, 2019 WL 2004328, at *4 (N.J.S.A. 2C:16-1); *Gurvey v. Twp. of Montclair New Jersey*, No. CV1917525KMESK, 2022 WL 970303, at *18 (D.N.J. Mar. 31, 2022) (N.J.S.A. 2C:28-4); *Jones v. Somerset Cnty. Prosecutor's Off.*, No. CV 15-2629 (FLW), 2017 WL 1337432, at *9 (D.N.J. Apr. 7, 2017) (N.J.S.A. 2C:30-2); *Livingstone v. Hugo Boss Store, Atl. City, NJ*, No. CV2101971RBKAMD, 2021 WL 3910149, at *7 (D.N.J. Sept. 1, 2021) (N.J.S.A. 2C:12-10); *Malcolm v. Bray*, No. CV1911734FLWDEA, 2019 WL 4918105, at *1 (D.N.J. Oct. 4, 2019) (N.J.S.A. 2C:33-4). "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 271, 773 A.2d 1132, 1142 (2001). Plaintiff does not allege any facts or cite to any law, aside from cursory mention of the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments in one opposition brief, to suggest that a private party has a right of action under state criminal laws. As such, the Court finds no basis to allow so here. Accordingly, counts one, two, three, four, five and six are futile and are dismissed with prejudice against all defendants.

**V.**

Plaintiff's remaining claims assert violations of federal civil rights (counts seven, eight, ten and thirteen) medical malpractice (count eleven), legal malpractice (count twelve) and vicarious liability (count fourteen) arising out of events that took place either in 2014, 2015, 2017 or unspecified years.[8] Count ten purports to bring a claim under 42 U.S.C. § 1988. Section 1988 provides for the recovery of attorney's fees, but it does not create an independent cause of action. *Moor*, 411 U.S. at 702; *Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 598 (D.N.J. 2013). Accordingly, count ten is dismissed with prejudice as to all defendants.

The moving defendants raise an array of defenses in their briefs to justify dismissal of the Amended Complaint with prejudice, including but not limited to, failure to abide by Rule 8(a)(2), res judicata, statute of limitations, collateral estoppel and the entire controversy doctrine. In evaluating these defenses, the Court has relied upon the Amended Complaint and "undisputed[] authentic document[s]" attached as exhibits to the motions to dismiss, including but not limited to, the operative complaint and the Court's orders filed in the 2016

---

[8] Plaintiff brought similar claims for alleged violations of 42 U.S.C. § 1981, 42 U.S.C. § 1985 and vicarious liability in the 2016 Lawsuit. Although Plaintiff has not asserted the relation-back doctrine applies, the Court finds it to be inapplicable. Rather than filing an amendment to her complaint in the 2016 Lawsuit, Plaintiff instead commenced the instant action in this Court on March 30, 2022.

Lawsuit. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192,

1196 (3d Cir. 1993); *see Schmidt*, 770 F.3d at 249 (citation omitted).

As the Court currently construes Plaintiff's claims, the assorted statute of

limitations varies from two to four years for the civil rights claims (*Moore v.*

*Temple Univ.*, 674 F. App'x 239, 241 (3d Cir. 2017); *Cito v. Bridgewater Twp.*

*Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989); *Roy v. U-Haul*, No. CIV. 14-2846

NLH/JS, 2015 WL 375664, at *3 (D.N.J. Jan. 28, 2015)); two years for the medical

malpractice claim (N.J.S.A. 2A:14-2) and six years for the legal malpractice claim.

(N.J.S.A. 2A:14-1). Because Plaintiff filed the instant lawsuit on March 30, 2022

and her causes of actions arise from events in 2014, 2015 and 2017, it is readily

apparent from the face of the Complaint that counts seven, eight, eleven, twelve,

thirteen and fourteen are time barred as to the following defendants: (1) MCM, (2)

Chowdhury, (3) Geller, (4) Kinneman, (5) NCPD, (6) Mitchell, (7) Volbrecht, (8)

Kirschenbaum, (9) Monmouth University, (10) Monmouth University Police, (11)

Anderson, (12) Diana, (13) Dimmena, (14) Jodry, (15) Mancini, (16) McElrath,

(17) Nagy, (18) Layton, (19) Trenton Psychiatric, (20) Ervilus and (21) Ozolins.

However, because two of the five incidents alleged in Plaintiff's Amended

Complaint occurred on unspecified dates, the Court limits its dismissal with

prejudice to the aforenamed defendants so that Plaintiff has an opportunity to

prosecute all timely claims against the defendants involved in the incidents for

which the dates are not known to the Court. To be completely clear, insofar as the claims asserted in Plaintiff's Amended Complaint arise from events in 2014 to 2017, they are dismissed with prejudice. Accordingly, the pending motions to dismiss are decided as follows:

1) The Motion to Dismiss filed by defendants MCM, Amina Chowdhury, Matthew Geller, Virginia Kinneman, RWJUH, and James McCallum (ECF No. 23) is granted as to MCM, Amina Chowdhury, Matthew Geller and Virginia Kinneman. Plaintiff may not amend her complaint as to these defendants. However, because Plaintiff has not specified the dates of the alleged incidents involving defendants RWJUH and James McCallum, the Motion to Dismiss with prejudice by RWJUH and Mr. McCallum is denied. The Amended Complaint is dismissed without prejudice as to RWJUH and Mr. McCallum, and Plaintiff may file an amendment to her complaint as to these two defendants.

2) The Motion to Dismiss filed by defendants Neptune City Police Department, Keith Mitchell, Michael Volbrecht and Edward Kirschenbaum (ECF No. 36) is granted with prejudice. Plaintiff may not amend her complaint as to these defendants.

3) The Motion to Dismiss filed by defendants Monmouth University, Monmouth University Police, Nina Anderson, Charlene Diana, Joanne Jodry, Maryanne Nagy, Grey Dimenna, Franca Mancini, and William McElrath (ECF No. 37) is granted with prejudice. Plaintiff may not amend her complaint as to these defendants.

4) The Motion to Dismiss filed by defendants Trenton Psychiatric Hospital and Patrick Ervilus (ECF No. 53) is granted with prejudice. Plaintiff may not amend her complaint as to these defendants.

5) The Motion to Dismiss filed by defendant Katie Ozolins (ECF No. 54) is granted with prejudice. Plaintiff may not amend her complaint as to this defendant.

Although Plaintiff states in her Amended Complaint that she wishes to challenge the statutes of limitations (Am. Compl. at ¶ 3), she neglects to do so. Rather, she simply concludes in her Opposition briefs (ECF Nos. 31, 48) that the severity of alleged wrongdoing against her should warrant voiding the statute of limitations. Plaintiff cites to Connecticut's statute of repose (Conn. Gen. Stat. § 52-584), which prescribes the limitations period for medical malpractice claims, and three Connecticut state cases discussing equitable tolling based on the doctrines of continuous treatment and continuous wrong. (ECF No. 31 at 5-7). Although Connecticut authority is inapplicable to the matter at hand, the Court will briefly address New Jersey's analog – the continuous wrong or continuous violations doctrine.

The continuing violations doctrine is "an equitable exception to the timely filing requirement." *Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 84 (3d Cir. 2014) (internal quotation marks and citation omitted). Under this doctrine, the statute of limitations is tolled if there was "continuing affirmative wrongful conduct" within the statutory period. *800 Servs. Inc. v. AT & T Corp.*, 30 F. App'x 21, 23 (3d Cir. 2002) (citing *Brenner v. Local 514, United Broth. of Carpenters and Joiners of America*, 927 F.2d 1283, 1296 (3rd. Cir.1991)). "[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations

period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Brenner*, 927 F.2d at 1295 (citation omitted). The doctrine "is not a substitute for a plaintiff's awareness of and duty to assert his/her rights in a timely fashion. . . . As such, the doctrine does not apply when plaintiffs are aware of the injury at the time it occurred." *Bennett*, 592 F. App'x at 85 (internal quotation marks and citations omitted). After a careful comb through of the Amended Complaint, the Court has not found any allegations of wrongful conduct that could arguably constitute a continuing practice to fall within ambit of the continuous violations doctrine. Plaintiff's Amended Complaint, as it currently reads, does not allege a continuing violation within any statutory limitations period of her claims. Rather, the last alleged act of misconduct – the involuntary commitment by RWJUH and subsequently Greystone Psychiatric Hospital – took place in 2017, and thus, it falls outside the limitations period for Plaintiff's civil rights and medical malpractice claims. Moreover, Plaintiff's knowledge of her injuries, evidenced by the fact that she commenced an action in state court and subsequently in this Court in 2016, would bar application of the doctrine. Because all of Plaintiff's claims arose out of events that took place in 2014, 2015 or 2017 there is no equitable reason to toll the statute of limitations.

The purpose of statutes of limitations is to "encourage rapid resolution of disputes, repose for defendants, and avoidance of litigation involving lost or

distorted evidence." *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 522 (3d Cir.

2007) (internal citation and quotation marks omitted). Allowing forth Plaintiff's

arguments here would detract from the purpose of statute of limitations. The Court

finds that Plaintiff has not shown any equitable reasons to waive the statute of

limitations, and as such, they must apply. *See Miller v. New Jersey State Dep't of

Corrections,* 145 F.3d 616, 618 (3d Cir. 1998).

In addition, many of the motions to dismiss assert that other claim preclusion

theories such as res judicata, collateral estoppel and the entire controversy doctrine

warrant dismissal of the case. Res judicata "requires a showing that there has been:

(1) a final judgment on the merits in a prior suit involving (2) the same claim and

(3) the same parties or their privies." *EEOC v. United States Steel Corp.*, 921 F.2d

489, 493 (3d Cir.1990) (citing *United States v. Athlone Industries, Inc.*, 746 F.2d

977, 983 (3d Cir.1984)). Although the same Plaintiff is indeed raising largely the

same claims based on the same facts against many of the same defendants from the

2016 Lawsuit, the Court did not issue a final judgment on the merits, and instead

dismissed without prejudice the Amended Complaint for improper service and

failure to set forth a short and plain statement of claims as required under Fed. R.

Civ. P. 8(a)(2). (ECF No. 45). While "[a] dismissal with prejudice operates as an

adjudication on the merits," *Papera v. Pennsylvania Quarried Bluestone Co.*, 948

F.3d 607, 611 (3d Cir. 2020) (internal quotation marks and citation omitted), a

20

dismissal without prejudice preserves a plaintiff's claim by allowing it to be brought in a second suit. *See Venuto v. Witco Corp.*, 117 F.3d 754, 760 (3d Cir. 1997). The Court dismissed the Amended Complaint in the 2016 Lawsuit without prejudice as to all defendants, and therefore, Plaintiff retained the opportunity to refile her complaint. As such, defendants have not met all the requirements to assert the affirmative defense of res judicata as, under the circumstances, there was no final judgment on the merits in the prior action.

The Court is similarly not convinced that collateral estoppel resolves the entire dispute. "Under federal common law, collateral estoppel applies when '(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment.'" *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 316 (3d Cir. 2019) (quoting *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)). Once more, only a portion of the current claims were actually litigated in the 2016 Lawsuit, namely those arising prior to 2016, and so collateral estoppel would again simply reach the same result as application of the statute of limitations.

Finally, the entire controversy doctrine "provides that non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy

21

doctrine." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 265 (3d Cir. 2004)

(internal quotation marks and citation omitted). The doctrine has been described as

"New Jersey's specific, and idiosyncratic, application of traditional res judicata

principles." *Rycoline Prod., Inc.*, 109 F.3d at 886 (citations omitted). "It is the

'commonality of facts, rather than legal issues, parties or remedies, 'that defines

the scope of the controversy and implicates the joinder requirements of the entire

controversy doctrine.'" *See Tillbury v. Aames Home Loan*, 2005 U.S. Dist. LEXIS

33455, at *28 (D.N.J. Dec. 12, 2005) (quoting *DiTrolio v. Antiles*, 142 N.J. 253,

272, 662 A.2d 494, 504 (1995)). Here, certain claims raised by Plaintiff as they

pertain to wrongdoing in 2014 through 2015 are covered under the entire

controversy doctrine, however, to the extent Plaintiff asserts claims related to later

controversies that arose after the 2016 Lawsuit was filed, the doctrine would not

preclude such claims.

## VI.

Even when liberally read in the light most favorable toward Plaintiff, the

Amended Complaint is too imprecise to make sense of. It consists of seemingly

five years of alleged wrongdoings by twenty-eight defendants between 2014 and

2019 (Am. Compl. at ¶ 2), but in highly variable capacities. Although some

defendants are featured prominently in the allegations, like RWJUH which was

allegedly involved in the involuntary commitment of Plaintiff on three occasions,

others appear sparsely. Some rambling could be forgiven so long as the claims make clear which defendant did what and when, but here, the claims simply reference the full, extensive factual allegations, quote statutes verbatim, and summarily conclude that every defendant committed each wrong against her because of her race, color and gender. (*Id.* at ¶¶ 209-263). As an example, each claim begins by stating Plaintiff "repeats and re-alleges the foregoing allegations as if fully set forth herein" but fails to enumerate the particular defendant(s) the claim is made against. As such, Plaintiff strangely charged NCPD with medical malpractice (*id.* at ¶¶ 248-51), Trenton Psychiatric with stalking (*id.* at ¶¶ 230-33), and RWJUH with legal malpractice (*id.* at ¶¶ 252-55) based on the cumulative hodgepodge of allegations. These sort of "shotgun pleadings" are impermissible as they flout the pleading requirements of Rule 8. *See Gov't Emps. Ins. Co. v. Pennsauken Spine & Rehab P.C.*, No. CV1711727RBKKMW, 2018 WL 3727369, at *3 (D.N.J. Aug. 6, 2018) (internal quotation marks and citation omitted). Incorporating all preceding allegations into every cause of action obfuscates a plaintiff's claims and defies Rule 8's mandate, thereby denying defendants the fullest extent of notice to which they are entitled. *See Lapella v. City of Atl. City*, No. CIV. 10-2454 JBS/JS, 2012 WL 2952411, at *5 n.3 (D.N.J. July 18, 2012) (citations omitted). *Pro se* litigants are entitled to some leniency, however, "there

are limits to [the Court's] procedural flexibility." *Mala v. Crown Bay Marina,* 704 F.3d 239, 245 (3d Cir. 2013).

As a final remark, while the Court is wary to dismiss a complaint filed by a *pro se* litigant, that is not to say that dismissal with prejudice is inappropriate in this instance, particularly in light of the futility that would result in allowing Plaintiff to amend where the claims are barred under the statute of limitations. It is more efficient and fairer to the remaining parties to dismiss the Amended Complaint without prejudice and permit Plaintiff an opportunity to amend her complaint's deficiencies within sixty (60) days such that each claim is clearly stated with supporting facts and identifies the party or parties against whom it is asserted. *See, e.g., Rosado v. Lynch*, No. CV153999ESJAD, 2017 WL 2495407, at *3 (D.N.J. June 8, 2017).

## VII.

For the above reasons and considerations, the Amended Complaint is dismissed in part with prejudice and without prejudice. Counts one, two, three, four, five and six are dismissed with prejudice because there is no private right of action to prosecute violations of state criminal statutes. Court ten is dismissed with prejudice because there is no independent cause of action under 42 U.S.C. § 1988. The motion to dismiss with prejudice by defendants NCPD, Mitchell, Volbrecht and Kirschenbaum (ECF No. 36); the motion to dismiss with prejudice by

24

defendants Monmouth University, Monmouth University Police, Anderson, Diana, Dimmena, Jodry, Mancini, McElrath, Nagy and Layton (ECF No. 37); the motion to dismiss with prejudice by defendants Trenton Psychiatric Hospital and Ervilus (ECF No. 53) and the motion to dismiss with prejudice by defendant Ozolins (ECF No. 54) are granted. The motion to dismiss with prejudice by MCM, Chowdhury, Geller, Kinneman, RWJUH and McCallum (ECF No. 23) is granted as to MCM, Geller, Chowdhury and Kinneman but denied as to RWJUH and McCallum. To the extent that Counts seven, eight, eleven, twelve, thirteen and fourteen arise out of conduct within the applicable limitations period, those claims are dismissed without prejudice. Plaintiff may file an amended complaint within sixty (60) days of entry of the accompanying Order. In the event that Plaintiff fails to file a timely amended complaint, this action will be dismissed with prejudice in its entirety. An order consistent with this Memorandum follows.

PETER G. SHERIDAN, U.S.D.J.